UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re OPTIONABLE SECURITIES LITIGATION            07 Civ. 3753 (LAK)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE
DESAI GROUP TO BE APPOINTED LEAD PLAINTIFF AND FOR
<u>APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

INTRODUCTION .......................................................................................................................... 1

PROCEDURAL BACKGROUND................................................................................................. 3

STATEMENT OF FACTS ............................................................................................................. 3

ARGUMENT.................................................................................................................................. 6

II. THE DESAI GROUP SHOULD BE APPOINTED LEAD PLAINTIFF .......................... 6

 A. The Procedural Requirements Pursuant To The PSLRA........................................ 6

 B. The Desai Group Is "The Most Adequate Plaintiff".............................................. 7

 1. The Desai Group Has Made A Motion For
 Its Appointment As Lead Plaintiff.............................................................7

 2. The Desai Group Has The
 Largest Financial Interest...........................................................................7

 3. The Desai Group Otherwise
 Satisfies Rule 23 ........................................................................................8

 a. The Desai Group Fulfills
 The Typicality Requirement .............................................................9

 b. The Desai Group Fulfills
 The Adequacy Requirement .............................................................9

III. THE COURT SHOULD APPROVE THE DESAI GROUP'S
 CHOICE OF COUNSEL ...................................................................................................10

CONCLUSION.............................................................................................................................11

# **TABLE OF AUTHORITIES**

## **CASES**

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993) ......................................................................................... 9

*Ferrari v. Gisch*, 225 F.R.D. 599 (C.D. Cal. 2004) ...................................................................... 10

*Ferrari v. Impath*, No. 03 Civ. 5667, 2004 WL 1637053 (S.D.N.Y. July 20, 2004) ..................... 9

*Greebel v. FTP Software, Inc.*, 939 F. Supp. 57 (D. Mass. 1996) ................................................. 6

*Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 1637053 (N.D. Ill. Aug. 11, 1997) ............................................................................................................... 6

*In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42 (S.D.N.Y. 1998) ......................... 7, 8, 9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D 395 (S.D.N.Y. May 27, 2004) ................................................................................................ 6

*Sczensy Trust v. DiCamillo*, 223 F.R.D. 234 (S.D.N.Y. 2004) ................................................ 8, 10

*Sofran v. Labranche & Co.*, 220 F.R.D. 398 (S.D.N.Y. 2004) ...................................................... 7

## **STATUTES**

15 U.S.C. § 77z-4(a)(3) ................................................................................................................. 6

15 U.S.C. § 77z -4(a)(3)(A)(i) ....................................................................................................... 6

15 U.S.C. § 77z -4(a)(3)(A)and (B) ............................................................................................... 6

15 U.S.C. § 77z -4(a)(3)(B) ........................................................................................................... 8

15 U.S.C. § 77z -4(a)(3)(B)(i) ....................................................................................................... 7

15 U.S.C. § 777z -4(a)(3)(B)(iii) ................................................................................................... 7

15 U.S.C. § 77z -4(a)(3)(B)(v) ..................................................................................................... 10

15 U.S.C. § 78u-4(a)(3) ................................................................................................................. 6

15 U.S.C. § 78u-4(a)(3)(A)(i) ....................................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(A)and (B) ............................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................... 8

15 U.S.C. § 78u-4(a)(3)(B)(i) ................................................................................................. 7

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................................... 7

15 U.S.C. § 78u-4(a)(3)(B)(v) .............................................................................................. 10

## **RULES**

Fed. R. Civ. P. 23(a) .............................................................................................................. 8

**PRELIMINARY STATEMENT**

Optionable, Inc. ("Optionable" or the "Company") investors Hemant Desai and NY Drugs Inc. (collectively, the "Desai Group" or "Movant") have losses totaling approximately $1,039,162 as a result of their investments in Optionable.[1]  Accordingly, the Desai Group is believed to have suffered the largest financial loss of any other movant and, as such, has the largest financial interest in the outcome of this litigation.  As the most adequate plaintiff, as defined by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Desai Group hereby moves for its appointment as Lead Plaintiff of a proposed class of persons or entities who purchased Optionable common stock in or pursuant to the May 9, 2005 Initial Public Offering ("IPO") as well as those who purchased or acquired Optionable securities between May 6, 2005 and May 14, 2007, inclusive (the "Class Period").[2]

**INTRODUCTION**

The above-captioned consolidated action is a securities purchaser class action lawsuit that has been brought against certain officers and/or directors of the Company alleging violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

---

[1]  NY Drugs Inc. has submitted a certification signed by its Vice President, Sunil Desai, brother of movant Hermant Desai.

[2]  In light of this Court's Orders of June 20, 2007 and July 3, 2007 consolidating the related actions, the Desai Group has presented its financial interest using the longest class period alleged among the related actions – May 6, 2005 through May 14, 2007, including shares of common stock purchased in or pursuant to the Company's IPO.

The Desai Group, with losses of approximately $1,039,162, in connection with its purchases of Optionable securities during the Class Period, is suitable and adequate to serve as Lead Plaintiff.[3]  The members of the Desai Group have submitted sworn certifications, demonstrating their desire to serve as Lead Plaintiff in this action and their understanding of the attendant duties and obligations of serving as such.  *See* Smith Decl. at Exhibit A.[4]  To the best of its knowledge, the Desai Group's losses represent the largest known financial interest of any class member seeking to be appointed as Lead Plaintiff.  *See* Smith Decl. at Exhibit C.  Movant is not aware of any other class member that has filed an action or filed an application for appointment as Lead Plaintiff that has sustained greater financial losses.  In addition, Movant satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and, therefore, is qualified for appointment as Lead Plaintiff in these actions.  Thus, as demonstrated herein, the Desai Group is presumptively the most adequate plaintiff and should be appointed Lead Plaintiff.

The Desai Group respectfully submits this memorandum of law in support of its motion, pursuant to Section 27 of the Securities Act, 15 U.S.C. § 77z-4(a)(3)(B) and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for an order: (1)

---

[3]  The losses suffered by the Desai Group are not the same as its legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation.  The approximate losses can, however, be determined from the certification required under Section 27 of the Securities Act, 15 U.S.C. § 77z-4(a)(2)(A) and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(A) and based upon reference to information concerning the current market for the Company's securities.

[4]  Sworn Certifications for Hemant Desai and NY Drugs Inc. documenting their transactions pursuant to the federal securities laws are attached as Exhibit A to the Declaration of Evan J. Smith In Support Of The Motion Of The Desai Group To Be Appointed Lead Plaintiff And For Approval Of Lead Plaintiff's Selection Of Lead Counsel (the "Smith Decl.").

appointing the Desai Group to serve as Lead Plaintiff pursuant to the Exchange Act; and (2) approving the Desai Group's selection of Brodsky & Smith, LLC and Schiffrin Barroway Topaz & Kessler, LLP to serve as Lead Counsel for the Class.

## PROCEDURAL BACKGROUND

The first filed lawsuit against defendants, *Fleiss v. Optionable, Inc.,* No. 07 Civ. 3753 (LAK), was filed in the Southern District of New York on May 11, 2007. Pursuant to 15 U.S.C. § 77z-4(a)(3)(A)(i) and 15 U.S.C. § 78u-4(a)(3)(A)(i), on May 11, 2007, plaintiff in the *Fleiss* action published notice that a class action lawsuit had been initiated against defendants over a widely circulated national business-oriented wire service advising members of the proposed class of their right to move the Court to serve as Lead Plaintiff no later than July 10, 2007. *See* Smith Decl. at Exhibit B. The members of the Desai Group are class members (*see* Smith Decl. at Exhibit A) and are timely filing this motion within the 60 day period following publication of the May 11, 2007 notice pursuant to Section 27 of the Securities Act and Section 21D of the Exchange Act.

## STATEMENT OF FACTS[5]

Optionable is a provider of natural gas and other energy derivatives trading and brokerage services. The Company provides its services to brokerage firms, financial institutions, energy traders and hedge funds nationwide. On May 9, 2005, Optionable filed a Prospectus with the SEC in connection with the Company's Initial Public Offering.

---

[5] These facts were derived from the allegations contained in the class action styled as *Peters v. Optionable Inc.,* No. 07 Civ. 3877 (LAK) (S.D.N.Y filed May 17, 2007), attached to the Smith Decl. at Exhibit D.

Throughout the Class Period, defendants failed to disclose or indicate that the Company was engaging in improper deals with commodities traders at Bank of Montreal ("BMO") and that the percentage of revenue the Company generated from BMO was not 20-30 percent as represented but rather well above 80 percent.  Moreover, the Company's exposure to potential loss of revenue from BMO was exponentially more than defendants represented.  Defendants also failed to disclose that the Company's CEO, Defendant Kevin P. Cassidy, had served time in prison for credit card fraud and tax evasion and that the Company's only purported independent director, Defendant Albert Helmig, was actually a related party and board member of Platinum Energy, a company with ties to Optionable.

In addition, defendants and other Company insiders took advantage of the artificially increased value of the Company's common stock during the Class Period.  On April 10, 2007, defendants issued a statement announcing that NYMEX Holdings, Inc., a reputable and leading provider of financial services to the energy and metals industries, had acquired 19 percent of the Company, with an option to increase its ownership to 40 percent.  Also on April 10, 2007, Defendants Cassidy, Edward J. O'Connor, and Mark Nordlicht took advantage of the increased price of the Company's stock and sold over 10.7 million shares of Company stock for gross proceeds in excess of $28.9 million.

Less than three weeks after the Company insiders sold their stock, Optionable's fraudulent scheme started to unravel on April 27, 2007, when BMO informed investors that it had lost between CND $350 million and $450 million in trading losses through Optionable.  On this news, shares of Optionable's stock fell $1.45 per share, or 20.96 percent, to close on April 27, 2007 at $5.56 per share, on unusually heavy trading volume.  On the next trading day, April 30, 2007, *TheStreet.com* published an article revealing that trading deals involving BMO

actually accounted for 86 percent of the Company's brokerage fees, not 75 percent as the Company had reported.

On May 8, 2007, BMO updated its investigation into the massive trading losses that it had incurred by trading through Optionable. BMO revealed that it was immediately suspending all of its business relationships with Optionable pending the results of a full external review and confirmed that two of its commodity trading professionals were placed on leave pending full results of the review. The following day, Optionable admitted that BMO comprised a significant portion of the Company's revenues and disclosed that BMO's statement and suspension were likely to adversely affect the Company's business. On this news, shares of the Company's stock declined 39.44 percent, or $1.83 per share, to close on May 9, 2007 at $2.81 per share.

On May 10, 2007, the Canadian *National Post* published a story revealing that the decision by BMO to act decisively was based on a harsh report it had received from its forensic auditors Deloitte and Touche ("Deloitte") regarding the activity of BMO's commodities traders. Deloitte found there had been "serious mismarking of the book of natural-gas options" and that some of the prices in the mismarked book had been provided by Optionable. Additionally, sources close to BMO's suspended trader revealed that the trader had a close personal relationship with executives at the Company, including Defendant Cassidy. On this news, shares of the Company's stock fell an additional $1.96 per share, or 70 percent, to close on May 10, 2007 at $0.85 per share, on heavy trading volume. On May 14, 2007, the Company announced that it had accepted the resignation of Defendant Cassidy.

## ARGUMENT

I.  **THE DESAI GROUP SHOULD BE APPOINTED LEAD PLAINTIFF**

   A.  **The Procedural Requirements Pursuant To The PSLRA**

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 77z-4(a)(3); 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 77z-4(a)(3)(A)(i); 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed action published a notice on *Marketwire* on May 11, 2007. *See* Smith Decl. at Exhibit B.[6] This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than July 10, 2007. Within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 77z-4(a)(3)(A) and (B); 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Next, according to the PSLRA, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members within 90 days after publication of the initial notice of pendency. 15 U.S.C. § 77z-

---

[6] *Marketwire* is a suitable vehicle for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997).

4(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining who is the "most adequate plaintiff," the Exchange Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-
>
> > (aa)  has either filed the complaint or made a motion in response to a notice . . .
> >
> > (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 77z-4(a)(3)(B)(iii); 15 U.S.C. § 78u-4(a)(3)(B)(iii); *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998).

  **B.** **The Desai Group Is "The Most Adequate Plaintiff"**

    **1.** **The Desai Group Has Made A Motion For Its Appointment As Lead Plaintiff**

Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the notice, the Desai Group timely moves this Court to be appointed Lead Plaintiff on behalf of all plaintiffs and class members covered by the consolidated action and any other actions deemed related by this Court.

    **2.** **The Desai Group Has The Largest Financial Interest**

According to 15 U.S.C. § 77z-4(a)(3)(B)(iii) and 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall appoint as Lead Plaintiff the class member who represents the largest financial interest in the relief sought by the action.  *See Sofran v. LaBrance & Co., Inc.*, 220 F.R.D, 398, 401 (S.D.N.Y. 2004).  As is demonstrated herein, the Desai Group (with losses of $1,039,162)

has the largest known financial interest in the relief sought by the Class. *See* Smith Decl. at Exhibit C.

### 3. The Desai Group Otherwise Satisfies Rule 23

According to 15 U.S.C. § 77z-4(a)(3)(B) and 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Oxford Health,* 182 F.R.D. at 49 (holding that typicality and adequacy are the only relevant prerequisites to Lead Plaintiff selection under the PSLRA); *see also Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004) (same). The members of the Desai Group have claims that are typical of other class members and can adequately serve as Lead Plaintiff. As detailed below, the members of the Desai Group

satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiff.

### a. The Desai Group Fulfills The Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed sub nom.*, 506 U.S. 1088 (1993); s*ee also Oxford Health,* 182 F.R.D. at 50 (same). However, the claims of the Lead Plaintiff need not be identical to the claims of the class to satisfy typicality. *See Ferrari v. Impath,* No. 03 Civ. 5667, 2004 WL 1637053, at *5 (S.D.N.Y. July 20, 2004).

The Desai Group seeks to represent a class of purchasers of Optionable securities which have identical, non-competing and non-conflicting interests. The members of the Desai Group satisfy the typicality requirement because, just like all other class members, they: (1) purchased or acquired Optionable securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages thereby. Thus, the Desai Group's claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

### b. The Desai Group Fulfills The Adequacy Requirement

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy

of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the Class; (2) whether the Movant is an adequate representative of the Class; (3) whether the interests of the Movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests. 15 U.S.C. § 78u-4(a)(3)(B). As detailed above, the Desai Group shares common questions of law and fact with the members of the Class and its claims are typical of the claims of other class members. Further, the members of the Desai Group have already taken significant steps demonstrating that they have and will protect the interests of the Class: they have executed sworn certifications detailing their Class Period transactions and expressing their willingness to serve as Lead Plaintiff; they have moved this Court to be appointed as Lead Plaintiff in this action; and they have retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner. *See Sczensy Trust,* 223 F.R.D. at 324 (discussing adequacy requirement). Furthermore, the Desai Group has the largest known financial interest which gives it "an incentive to prosecute the case vigorously." *Ferrari v. Gisch,* 225 F.R.D. 599, 607 (C.D. Cal. 2004). Thus, the Desai Group, in addition to having the largest financial interest, also *prima facie* satisfies the typicality (Rule 23(a)(3)) and adequacy (Rule 23(a)(4)) requirements of Rule 23 of the Federal Rules of Civil Procedure and, therefore, satisfies all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. § 77z-4(a)(3)(B)(iii) and 15 U.S.C. § 78u-4(a)(3)(B)(iii).

II.   **THE COURT SHOULD APPROVE THE DESAI GROUP'S CHOICE OF COUNSEL**

Pursuant to 15 U.S.C § 77z-4(a)(3)(B)(v) and 15 U.S.C § 78u-4(a)(3)(B)(v), the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. In that

regard, the Desai Group has selected and retained Brodsky & Smith, LLC and Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel for the Class. These firms have extensive experience in prosecuting complex securities actions and are well qualified to represent the Class. *See* Smith Decl. at Exhibits E and F.

Because there is nothing to suggest that the movant or its counsel will not fairly and adequately represent the Class, or that the movant is subject to unique defenses – which is the *only* evidence that can rebut the presumption of adequacy under the Exchange Act – this Court should appoint the Desai Group as Lead Plaintiff and approve its selection of Brodsky & Smith, LLC and Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel for the Class.

## CONCLUSION

For the foregoing reasons, the Desai Group respectfully requests that the Court: (a) appoint the Desai Group as Lead Plaintiff; and (b) approve Brodsky & Smith, LLC and Schiffrin Barroway Topaz & Kessler, LLP as Lead Counsel for the Class.

Dated: July 10, 2007

Respectfully submitted,

**BRODSKY & SMITH, LLC**

By:    */s Evan J. Smith, Esquire (ES3254)*
Evan J. Smith (ES3254)
240 Mineola Blvd.
Mineola, NY 11501
Telephone:    (516) 741-4977
Facsimile:    (516) 741-0626

*[Additional Counsel Appear on Next Page]*

**SCHIFFRIN BARROWAY**
**TOPAZ & KESSLER, LLP**
Stuart L. Berman
Sean M. Handler
Ian D. Berg
280 King of Prussia Road
Radnor, PA 19087
Telephone:   (610) 667-7056
Facsimile:    (610) 667-7706

**Proposed Lead Counsel**